BLUEBONNET SAVINGS BANK, FSB, Stone Capital, Inc., and James M. Fail, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 95–532C.

United States Court of Federal Claims.

March 21, 2002.

I. Thomas Bieging, Denver, Colorado, attorney of record for plaintiffs Bluebonnet Savings Bank, FSB and Stone Capital, Inc.

Mitchell R. Berger, Washington, D.C., attorney of record for plaintiff James M. Fail, Michael J. Schaengold and Ugo Colella, of counsel.

Elizabeth Marie Hosford, Department of Justice, Washington, D.C., with whom was Deputy Assistant Attorney General Stuart E. Schiffer, for defendant. David M. Cohen, Director, and Jeanne E. Davidson, Deputy Director.

*OPINION*

FUTEY, Judge.

This case is before the court on remand from the United States Court of Appeals for the Federal Circuit (Federal Circuit). The United States Court of Federal Claims (Court of Federal Claims) ruled in favor of plaintiff on the issue of liability. *Bluebonnet Sav. Bank, FSB v. United States,* 43 Fed.Cl. 69 (1999). After a trial on the merits, the court denied expectancy damages and plaintiff appealed to the Federal Circuit. *Bluebonnet Sav. Bank, FSB v. United States,* 47 Fed.Cl. 156 (2000). On September 21, 2001, the Federal Circuit upheld the court's decision as to Bluebonnet's claim for non-Economic Benefits Agreement damages. It did not, however, agree with the court's holding

as to the Economic Benefits Agreement (EBA) damage claim and remanded the case for entry of an award of damages in accordance with its opinion. *Bluebonnet Sav. Bank, FSB v. United States,* 266 F.3d 1348 (2001). After denying a rehearing *en banc,* the Federal Circuit issued its mandate on November 27, 2001. At the parties' request, the Court of Federal Claims allowed briefing on the issue of proper damages in accordance with the Federal Circuit's remand. Pursuant to the court's scheduling order, all briefing was completed on February 28, 2002.[1]

Plaintiff argues that, in accordance with the Federal Circuit's opinion, it is entitled to damages in the amount of $132,398,200. This amount represents $5,400,392, the payments already made by Mr. Fail to Mr. Shaw under the EBA, in addition to the $126,997,808 which represents the value of the EBA debt as calculated in the Memo Agreement. Defendant argues that the Federal Circuit's opinion instructed the court to conduct further proceedings in order to determine what plaintiff's financing costs would have been absent the breach. According to defendant's interpretation of the appellate decision, after the court determines the appropriate "but for the breach" financing costs, it would then need to subtract those costs from the EBA costs actually incurred because of the breach, in order to reach a "fair and reasonable" damage award.

In reaching its decision, the Federal Circuit agreed with the court's determinations:

> (1) that the breach caused Fail and CFSB to enter into the EBA, (2) that the increased financing costs reflected in the EBA were due to the increased risk of financing Bluebonnet following the breach, and (3) that it was foreseeable that the breach would cause such increased financing costs . . . .

*Bluebonnet,* 266 F.3d at 1357. The Federal Circuit, however, reversed the court's ruling that EBA damages could not be quantified to a reasonable certainty. It remanded the case and instructed the court, "to formulate an appropriate award of EBA-related damages *as determined by the payments already made by Fail to Shaw under the EBA, and the value of the EBA debt as calculated in the Memo Agreement.*" *Id.* at 1358 (emphasis added).

According to the Federal Circuit, "Bluebonnet persuasively argues that it would not have entered into the EBA but for the breach and, therefore, *it should be entitled to the entire cost of the EBA.*" *Id.* at 1356 (emphasis added). At the conclusion of the trial on the merits, the court determined that plaintiffs EBA damages were speculative because Ms. Robinson, Deputy Counsel for CFSB and author of the Second Amended and Restated Economic Benefits Agreement (SAREBA) and the Memo Account, could not explain the basis for the costs contained in the Memo Account. On appeal, however, the Federal Circuit stated:

> [T]he Memo Account, which purports to document the amounts owed by Fail to Shaw under the SAREBA was presented at trial. Evidence showed that it was a document regularly prepared in the normal course of business and that the amounts owed were agreed to by representatives of Shaw and Fail, whose interests in the amount owed were adverse to each other. However, the Court of Federal Claims improperly rejected the Memo Account as support for the EBA damages because the Deputy Counsel for CFSB was unable to fully explain the basis for all the costs set out in it. This was clear error because the amounts owing under the SAREBA are directly spelled out in that contract and evidence was presented that the Memo Account was prepared in accordance with the SAREBA. This meets the reasonable certainty test and it is inappropriate to require CFSB to justify the basis for each term in the agreement.

*Id.* at 1357.

The Federal Circuit gave the court further guidance in issuing a damage award in this case when it noted:

1. The facts of this case were described in detail in the opinion issued on liability, *Bluebonnet Sav. Bank, FSB v. United States,* 43 Fed.Cl. 69 (1999), and were reiterated in the court's initial opinion denying expectancy damages, *Bluebonnet Sav. Bank, FSB v. United States,* 47 Fed.Cl. 156 (2000). Furthermore, they were again restated in the Federal Circuit's opinion, *Bluebonnet Sav. Bank, FSB v. United States,* 266 F.3d 1348 (2001). The court, therefore, finds it unnecessary to describe the factual background here.

In the absence of any more reliable method of determining the quantum of EBA damages, the undisputed $5.4 million payment and the Memo Account memorializing the amounts due and payable under the SAREBA are more than sufficient to provide a "fair and reasonable" basis from which to calculate these EBA-related damages.

*Id.*

As previously stated, however, defendant argues that plaintiff would have incurred a certain amount of financing costs regardless of whether the breach had occurred. Therefore, according to defendant, the court still needs to establish the "but for" the breach financing costs that plaintiff would have incurred and subtract that amount from the Memo Account in order to fashion an appropriate award. In response to the argument that plaintiff had not sufficiently established its EBA damages, the Federal Circuit stated:

It is undisputed, however, that CFSB had paid approximately $5.4 million under the EBA. The Court of Federal Claims concluded that Bluebonnet was not entitled to that cost because it failed to establish its but-for the breach hypothetical world. This finding was clearly erroneous, and contradicted the court's explicit finding that the breach, specifically the denial of requests to distribute dividends, adversely affected the terms of the EBA.... *In the absence of the breach, Fail and CFSB would not have agreed to the EBA because dividend financing would have been available and it would have been unnecessary*

to give up a significant equity stake in CFSB to obtain financing.

*Bluebonnet*, 266 F.3d at 1356 (emphasis added).[2] Furthermore, the Federal Circuit continued:

Even if Bluebonnet had been justifiably unable to substantiate the amount of the EBA damages, it would have been appropriate for the court to award jury verdict damages as a fair and reasonable approximation of EBA damages. *This was, in fact, unnecessary, as we have shown, because Bluebonnet adequately substantiated the damages it suffered as a result of entering into the EBA.*

*Id.* at 1357 (emphasis added).

Notwithstanding defendant's current arguments to the contrary, the court views the mandate of the Federal Circuit to be very clear.[3] The Federal Circuit held that Bluebonnet persuasively argued that it was entitled to the entire cost of the EBA as an award of damages. It further found that the Memo Account was sufficient support for the EBA damages. Furthermore, it stated that Bluebonnet had adequately substantiated the damages it suffered as a result of entering into the EBA.

The court interprets the Federal Circuit's mandate to require that the court add the $5,400,392 to the $126,997,808, which represents the value of the EBA debt as calculated in the Memo Agreement, in order to arrive at the damage award in this case.[4] The court is constrained by the mandate of the Federal Circuit.[5]

---

2. The Federal Circuit also emphasized that, "[b]oth parties' experts agreed that costs arising from the EBA are appropriate costs of financing that can be awarded as damages." *Bluebonnet*, 266 F.3d at 1357.

3. It is important to note that defendant initially interpreted the Federal Circuit's opinion just as the court is now interpreting it. In defendant's petition for rehearing, it stated:

Notwithstanding this failure of proof, the Panel remanded for an award to Mr. Fail based upon the profits relinquished in the EBA, without a deduction for the costs that he admittedly would have incurred absent the breach. *Bluebonnet III*, slip op. 18. Such an award would be based upon Mr. Fail's entire cost of financing rather than merely his breach-related increased cost of financing. Thus, the Panel's

decision rewards Mr. Fail for his failure to prove his "but-for world," ....

Petition For Rehearing Of Defendant–Appellee, The United States, at 7. The Federal Circuit denied a rehearing on November 20, 2001.

4. It should also be noted that defendant and plaintiff entered into a prior settlement agreement at the conclusion of district court litigation which capped the damage recovery in this case to $136,075,000. Transcript of Status Conference held December 19, 2001, at 13. Both parties presumably performed an adequate analysis to arrive at that amount.

5. Defendant makes no argument before the court that it has not already made before the Federal Circuit both on appeal and in its petition for rehearing.

For the above-stated reasons, the Clerk is directed to enter judgement in favor of plaintiff James M. Fail in the amount of $132,398,200. No costs.

IT IS SO ORDERED.